IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAW SCHOOL ADMISSION COUNCIL, INC.**, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>**TESTMAX, INC.**, a Delaware corporation,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Law School Admission Council, Inc. ("Plaintiff" or "LSAC") brings this action against Defendant TestMax, Inc. ("Defendant" or "TestMax") and alleges as follows:

## PARTIES

1. LSAC is a non-profit corporation organized under the laws of Delaware, with its principal place of business located at 662 Penn Street, Newtown, PA 18940.

2. Upon information and belief, TestMax, Inc. is a corporation organized under the laws of Delaware, with its principal place of business located in Santa Monica, CA or at 280 W. Canton Avenue, Suite 250, Winter Park, FL 32789.

3. Upon information and belief, TestMax assists in digital education and offers comprehensive digital prep courses for the Law School Admission Test ("LSAT") and the Bar Exam, accessible at https://testmaxprep.com/. TestMax conducts business throughout the United States, including in Pennsylvania.

## JURISDICTION

4. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. LSAC's federal claims are predicated on at least 15 U.S.C. §§ 1114 and 1051 *et seq*. LSAC's claims arising under the laws of the State of Pennsylvania are

substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over TestMax pursuant to the forum selection clause set forth in Section VI(C) of the LSAT® Content License Agreement, entered into by and between LSAC, as Licensor, and TestMax, as Licensee, effective as of July 1, 2024 (hereinafter "2024 CLA"), which states:

> <u>Choice of Law; Injunctive Relief</u>. This License Agreement shall be covered by the laws of the Commonwealth of Pennsylvania, without regard to its conflicts-of-law provisions thereof. Any action to enforce, or otherwise relating to, this License Agreement shall be brought exclusively in the state and federal courts of Pennsylvania. Licensee understands and acknowledges that a breach of this License Agreement may cause Licensor irreparable harm and injury for which there may not be adequate remedies. Therefore, Licensee agrees that Licensor shall be entitled to injunctive and/or equitable relief in addition to all other remedies provided under this License Agreement or available at law or equity.

6. This Court also has personal jurisdiction over TestMax because it has directed tortious activities toward the State of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, advertising and selling products and/or services that infringe trademarks owned by LSAC to consumers within Pennsylvania through a highly interactive commercial website, with knowledge that LSAC is located in Pennsylvania and is harmed in Pennsylvania as a result of TestMax's sales of such infringing products and/or services to Pennsylvania residents.

**VENUE**

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district. In addition, the Parties expressly agreed, pursuant to Section VI(C) of the 2024 CLA, that "[a]ny action to enforce, or otherwise relating to [the 2024 CLA] shall be brought

exclusively in the state and federal courts of Pennsylvania." Accordingly, TestMax is subject to personal jurisdiction in this judicial district, making venue proper here.

## FACTUAL BACKGROUND

### *LSAC, Its Intellectual Property, and Its Business*

8. LSAC is a non-profit educational services entity that provides products and services to law schools, law school candidates, law school students, and legal professionals. Among other things, LSAC prepares and administers the Law School Admission Test ("LSAT"), which has been continuously administered for over seventy-five years.

9. LSAC is the creator and sole owner of the content and user interface of the LSAT, as well as the LSAT, Official LSAT Prep, LawHub, LawHub Advantage, Digital LSAT, and LSAC trademarks.

10. LSAC's business includes developing and licensing standardized test content and related digital platforms for law school admissions.

11. LSAC devotes significant time, energy, and resources toward protecting its products, services, brand, and reputation. Accordingly, LSAC's products and services are covered by intellectual property laws, including trademark and copyright laws.

12. LSAC owns active trademarks and service marks covering its products and services (the "Marks"). LSAC maintains a non-exhaustive, representative list of Marks accessible at https://www.lsac.org/about/lsac-policies/trademarks. LSAC's Marks include, but are not limited to LSAT®, LSAT Prep®, Law School Admission Test®, and LawHub®.

13. LSAC's Marks are registered with the U.S. Patent and Trademark Office ("USPTO") and thus accessible at the USPTO's online trademark search system (https://tmsearch.uspto.gov/search/search-information). Such registrations include, but are not limited to, U.S. Reg./Serial Nos. 1,082,047; 2,563,632; 3,678,865; 4,382,765; 7,629,598, and 8,880,9546.



**U.S. Registration No. 4,382,765**



**U.S. Registration No. 7,629,598**

14. LSAC's Marks, including the trademarks (comprising at least U.S. Registration Nos. 4,382,765 and 7,629,598, hereinafter collectively the "LSAT Trademarks") and service marks identified above, are valid, subsisting, and enforceable.

15. LSAC's rights to use the Marks have become incontestable under 15 U.S.C. § 1065 to the extent that any such Marks have been in continuous use, LSAC received no final legal decision issued against such Marks, and LSAC timely filed a Section 15 Declaration describing its use of such Marks. Accordingly, the registrations of these Marks serve as conclusive evidence of LSAC's ownership of such marks and of its exclusive right to use and direct the use of the Marks

in commerce and in connection with the sale and distribution of products and services bearing the Marks identified in the registrations, as provided by 15 U.S.C. § 1115(b).

16. LSAC's Marks have been used in commerce for decades. For example, certain Marks concerning "LSAT" (e.g., U.S. Reg. Nos. 1,082,047 and 3,678,865) have been continuously used in commerce since 1948.

17. Through years of LSAC investing substantial costs in their advertising and use, the Marks have become famous, distinctive, and valuable. Accordingly, LSAC takes significant measures to protect its Marks.

18. LSAC owns and operates numerous websites and internet-based online services, including LawHub, which is an online platform provided by LSAC that offers products and services to law school candidates, law school students, and legal professionals.

19. In connection with LSAC's websites and online services, including LawHub, LSAC has created proprietary materials ("Proprietary Content"), which it makes available through its websites and online services.

20. LSAC offers access to LawHub by both a free subscription option and a paid subscription option called "LawHub Advantage."

21. As part of its business, LSAC grants royalty-bearing licenses to test-preparation companies, which permit such companies to use certain Marks (including the LSAC Trademarks) in connection with their courses.

22. By allowing only authorized licensees to use the Marks (including the LSAC Trademarks) under specific circumstances, LSAC maintains the quality, integrity, and reputation of the LSAC family of products and services.

23. LSAC has developed a digital platform ("Student Application") that provides electronic access to questions, including the stimulus, stem and answer options (collectively, "Items"), from past LSATs ("Disclosed Tests") utilizing the user interface of the Digital LSAT.

24. LSAC owns all rights, title, and interest in the LSAT test content, the Student Application digital platform, and the LSAC Trademarks.

25. The LSAT content includes questions from Disclosed Tests, which are made available electronically through LSAC's proprietary digital interface. Licensees are expressly prohibited from replicating or mimicking this interface in their own educational materials or platforms.

26. LSAC licenses its content to educational service providers under strict terms.

27. Licensees may use LSAC content solely to prepare students for the LSAT, and only for students who have an active student subscription.

28. Often, the license granted is non-exclusive, worldwide, and limited in scope, with specific restrictions on use, reproduction, and distribution of LSAC content.

29. Licensees are prohibited from creating derivative works, modifying, translating, and/or otherwise altering LSAC content. All LSAT items used in courses must be used verbatim in English, without modification or editing, except for symbolization.

30. Licensees must comply with LSAC's security requirements, including safeguarding content from unauthorized reproduction, distribution, or disclosure and maintaining content in a secure, encrypted environment.

31. LSAC treats its test content, business strategies, and other proprietary information as confidential. Licensees are required to maintain the confidentiality of all such information and may only use it as expressly permitted under the license agreement.

32. LSAC reserves the right to audit licensees for compliance, to terminate licenses for breach, and to seek injunctive or equitable relief in the event of unauthorized use or disclosure of its intellectual property.

***Defendant's Unauthorized Use of LSAC Materials and Other Violations of Law***

33. On or about June 30, 2020, LSAC and TestMax entered into a LSAT® Content License Agreement ("2020 CLA"), under which TestMax was granted specific licenses to use certain intellectual property owned by LSAC for LSAT preparation services, in exchange for TestMax paying certain licensing fees, as defined therein.

34. Section II(B)(i) of the 2020 CLA provides, in relevant part, that "[a]ll fees referenced [in the 2020 CLA], including . . . the Coaching License Fee, Student Subscription Fee, Marketing License Fee, and Book Publication Fee, are referred to collectively as 'License Fees[,]' . . . [and] are owed and are to be paid [by TestMax to LSAC] in exchange for the rights granted and content made available [under the 2020 CLA]."

35. Section II(B)(iii) of the 2020 CLA provides, in relevant part, that "[LSAC] may charge a late fee of one and one-half percent (1.5%), or the maximum rate allowed by law, for any invoice or License Fee that is past due until such amount is paid in full, together with any costs of collection incurred by [LSAC], including reasonable attorneys' fees, costs and expenses."

36. As of June 2023, TestMax had failed to remit timely payment of $40,319 to LSAC for certain licensing fees due and owing under the 2020 CLA.

37. LSAC and TestMax executed a new LSAT® Content License Agreement (hereinafter "2023 CLA"), effective as of July 1, 2023, pursuant to which TestMax was again granted specific licenses to use certain intellectual property owned by LSAC for LSAT preparation services, in exchange for TestMax paying certain licensing fees, as defined therein.

38. Section II(B)(i) of the 2023 CLA provides, in relevant part, that "[a]ll fees referenced [in the 2023 CLA], including . . . the Coaching License Fee, Student Subscription Fee, Marketing License Fee, and Book Publication Fee, are referred to collectively as 'License Fees[,]' . . . [and] are owed and are to be paid [by TestMax to LSAC] in exchange for the rights granted and content made available [under the 2023 CLA]."

39. Section II(B)(iii) of the 2023 CLA provides, in relevant part, that "[LSAC] may charge a late fee of one and one-half percent (1.5%), or the maximum rate allowed by law, for any invoice or License Fee that is past due until such amount is paid in full, together with any costs of collection incurred by [LSAC], including reasonable attorneys' fees, costs and expenses."

40. As of June 2024, TestMax had failed to remit timely payment of $95,758 to LSAC for certain licensing fees due and owing under the 2023 CLA.

41. On or about June 28, 2024, LSAC and TestMax entered into a Content Purchase Agreement (hereinafter "CPA"), under which LSAC acquired certain intellectual property owned by TestMax, set forth in Schedule A of the CPA.

42. The CPA expressly states as of the June 28, 2024 Effective Date, "TestMax is currently indebted to Buyer in the amount of $166,000 because of unpaid license fees due and owing from TestMax to Buyer."

43. In consideration for the purchase of the materials, pursuant to Section 2.1(d)-(e) of the CPA, LSAC issued a credit to TestMax in the amount of $34,000 to be applied to TextMax's outstanding debt to LSAC and suspended collection of TestMax's unpaid licensing fees until January 1, 2025.

44. On or about July 1, 2024, LSAC and TestMax executed a new LSAT® Content License Agreement (the "2024 CLA"), pursuant to which TestMax was again granted specific

licenses to use certain intellectual property owned by LSAC for LSAT preparation services, in exchange for TestMax paying certain licensing fees, as defined therein.

45. Section II(B)(i) of the 2024 CLA provides, in relevant part, that "[a]ll fees referenced [in the 2024 CLA], including . . . the Coaching License Fee, Student Subscription Fee, Processing Fee, Marketing License Fee, and Book Publication Fee, are referred to collectively as 'License Fees[,]' . . . [and] are owed and are to be paid [by TestMax to LSAC] in exchange for the rights granted and content made available [under the 2024 CLA]."

46. Section II(B)(iii) of the 2024 CLA provides, in relevant part, that "[LSAC] may charge a late fee of one and one-half percent (1.5%), or the maximum rate allowed by law, for any invoice or License Fee that is past due until such amount is paid in full, together with any costs of collection incurred by [LSAC], including reasonable attorneys' fees, costs and expenses."

47. As of December 2025, TestMax had failed to remit timely payment of $34,080 to LSAC for certain licensing fees due and owing under the 2024 CLA.

48. Section III(C) of the 2024 CLA provides, in relevant part, that "[i]n the event that [LSAC] believes that [TestMax] has breached a material term or condition of this License Agreement, . . . [LSAC] shall have the right to terminate this License Agreement, effective upon notice to [TestMax]."

49. Section III(E) of the 2024 CLA provides, in relevant part, that "[u]pon . . . termination of this License Agreement for any reason: the rights granted under this License Agreement shall immediately terminate and . . . [TestMax] shall cease any and all uses of the LSAC Trademarks . . . ."

50. As of the date of the filing of this Complaint, TestMax has failed to pay all fees due ($170,157) and owing under the 2020 CLA, 2023 CLA, and 2024 CLA.

51. In accordance with Sections III(C) and VI(G) of the 2024 CLA, on November 12, 2025, LSAC sent a letter to TestMax via email to notify TestMax that it was in breach of a material term of the 2024 CLA due to its failure to pay the remaining unpaid licensing fees owed to LSAC ("Notice Letter"). The Notice Letter further notified TestMax that, in accordance with the terms of the 2024 CLA, if the total past-due balance was not paid within thirty days of the Notice Letter, any rights granted to TestMax under the 2024 CLA would immediately terminate and TestMax would be required to cease any and all use of the Items (as defined in the 2024 CLA), as well as all other content, Information (as defined in the 2024 CLA), and all use of the LSAC Trademarks (as defined in the 2024 CLA). *See* Ex. 1.

52. Section III(C) of the 2024 CLA provides, in relevant part, that "[TestMax] shall have thirty (30) days from the date of the notice to cure the alleged breach and to notify [LSAC] in writing that the cure has been affected. If [TestMax] fails to notify [LSAC] in writing that cure has been affected within thirty (30) days of notice of the breach, this License Agreement shall automatically be terminated."

53. On November 12, 2025, LSAC received a notification that delivery of the written email notice to TestMax was "complete" "but no delivery notification was sent by the destination server: Mehran (mehran@testmaxprep.com)."

54. On November 12, 2025, in accordance with Section VI(G) of the 2024 CLA, LSAC sent the Notice Letter to TestMax via overnight mail. As of November 12, 2025, TestMax owed LSAC a total past-due balance of $167,052.00 for unpaid license fees.

55. In an abundance of caution, on November 18, 2025, LSAC sent the Notice Letter to TestMax again via overnight UPS mail.

56. TestMax failed to pay LSAC the total past-due balance, failed to notify LSAC in writing, and failed to cure its breach by December 12, 2025, the end of the cure period.

57. Accordingly, the 2024 CLA, including any rights available thereunder, was automatically and immediately terminated on December 12, 2025.

58. As of the date of this Complaint, TestMax has still not cured its material breach of the 2020 CLA, 2023 CLA, and 2024 CLA by paying the total past-due balance of $170,157 for unpaid license fees.

59. On information and belief, TestMax is the owner and creator of LSATMax.

60. On information and belief, LSATMax is an LSAT prep course that uses "officially licensed questions from previous LSATs." https://testmaxprep.com/lsat/faq#:~:text=9am%20%E2%80%93%206pm%20PST.-,What%20is%20LSATMax?,LSAT%20score%20in%20the%20140s.

61. Following termination of the 2024 CLA between LSAC and TestMax, on information and belief, TestMax has continued to use the LSAC Trademarks and affiliate Items, including use of "LawHub" and the LSAC mark with stylized letters.

62. As of January 15, 2026, the LSAC Trademarks are prominently displayed on the LSATMax course-offering webpage:

11





https://testmaxprep.com/lsat/select-course?v=2
(emphasis added)

      63.    TestMax's trademark infringement has been and continues to be intentional, willful and in bad faith.

**COUNT I**
**Breach of Contract**
**(2020 CLA)**

64. LSAC realleges and incorporates herein by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

65. TestMax entered into the 2020 CLA with LSAC, by agreeing to be bound by all of the terms and conditions set forth therein.

66. The 2020 CLA, as accepted by TestMax, is a valid, enforceable contract.

67. LSAC has at all times complied with its obligations under the 2020 CLA.

68. Section II(B)(i) of the 2020 CLA provides, in relevant part, that "[a]ll fees referenced [in the 2020 CLA], including . . . the Coaching License Fee, Student Subscription Fee, Marketing License Fee, and Book Publication Fee, are referred to collectively as 'License Fees[,]' . . . [and] are owed and are to be paid [by TestMax to LSAC] in exchange for the rights granted and content made available [under the 2020 CLA]."

69. TestMax breached Section II(B)(i) of the 2020 CLA by failing to pay licensing fees and other amounts due.

70. TestMax's breach is material.

71. LSAC has suffered damages as a direct result of TestMax's breach, including but not limited to the unpaid balance of $40,319, plus late fees, attorneys' fees, and collection costs as provided in Section II(B)(iii) of the 2020 CLA.

**COUNT II**
**Breach of Contract**
**(2023 CLA)**

72. LSAC realleges and incorporates herein by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

73. TestMax entered into the 2023 CLA with LSAC, by agreeing to be bound by all of the terms and conditions set forth therein.

74. The 2023 CLA, as accepted by TestMax, is a valid, enforceable contract.

75. LSAC has at all times complied with its obligations under the 2023 CLA.

76. Section II(B)(i) of the 2023 CLA provides, in relevant part, that "[a]ll fees referenced [in the 2023 CLA] including . . . the Coaching License Fee, Student Subscription Fee, Marketing License Fee, and Book Publication Fee, are referred to collectively as 'License Fees[,]' . . . [and] are owed and are to be paid [by TestMax to LSAC] in exchange for the rights granted and content made available [under the 2023 CLA]."

77. TestMax breached Section II(B)(i) of the 2023 CLA by failing to pay licensing fees and other amounts due.

78. TestMax's breach is material.

79. LSAC has suffered damages as a direct result of TestMax's breach, including but not limited to the unpaid balance of $95,758, plus late fees, attorneys' fees, and collection costs as provided in Section II(B)(iii) of the 2023 CLA.

**COUNT III**
**Breach of Contract**
**(2024 CLA)**

80. LSAC realleges and incorporates herein by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

81. TestMax entered into the 2024 CLA with LSAC, by agreeing to be bound by all of the terms and conditions set forth therein.

82. The 2024 CLA, as accepted by TestMax, is a valid, enforceable contract.

83. LSAC has at all times complied with its obligations under the 2024 CLA.

84. Section II(B)(i) of the 2024 CLA provides, in relevant part, that "[a]ll fees referenced [in the 2024 CLA] including . . . the Coaching License Fee, Student Subscription Fee, Processing Fee, Marketing License Fee, and Book Publication Fee, are referred to collectively as 'License Fees[,]' . . . [and] are owed and are to be paid [by TestMax to LSAC] in exchange for the rights granted and content made available [under the 2024 CLA]."

85. TestMax breached Section II(B)(i) of the 2024 CLA by failing to pay licensing fees and other amounts due.

86. TestMax's breach is material.

87. LSAC has suffered damages as a direct result of TestMax's breach, including but not limited to the unpaid balance of $34,080, plus late fees, attorneys' fees, and collection costs as provided in Section II(B)(iii) of the 2024 CLA.

## COUNT IV
### Federal Trademark Infringement
### (15 U.S.C. § 1114)

88. LSAC realleges and incorporates herein by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

89. As alleged more fully herein, the United States Patent and Trademark Office has granted federal trademark registrations for the LSAC Trademarks, which are owned by LSAC.

90. LSAC's Marks are on the Principal Register of the United States Patent and Trademark Office.

91. LSAC owns all rights, title and interest in the U.S. trademark registration for LSAC's Marks.

92. The LSAC Marks are incontestable and constitute conclusive evidence of the validity of the marks, LSAC's ownership of the marks and LSAC's exclusive rights to use the marks in commerce.

15

93. The LSAC Trademarks are distinctive and LSAC has built up valuable goodwill in its trademarks. Through its prior and continuous use of its marks in commerce, LSAC has been identified in the public mind as the source of the products to which the LSAC Trademarks are applied.

94. TestMax's unauthorized use in commerce of the LSAC Trademarks in connection with the sale, offering for sale, distribution, or advertising of LSATMax, and any other good or service, to unsuspecting consumers is a violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

95. TestMax's unauthorized use of the LSAC Trademarks in connection with LSATMax constitutes use in commerce, without the consent of LSAC, of a reproduction, copy, or colorable imitation of the LSAC Trademarks in connection with the sale, offer for sale, distribution or advertising of products and/or services. Such use is likely to cause confusion or mistake, or to deceive customers, and therefore infringes the LSAC Trademarks, in violation of 15 U.S.C. § 1114(1).

96. TestMax was informed that the 2024 CLA between LSAC and TestMax would automatically terminate thirty days from November 12, 2025.

97. TestMax was informed that upon termination, any rights granted under the CLA, including the use of the LSAC Trademarks, would immediately terminate.

98. The 2024 CLA terminated on December 12, 2025.

99. TestMax has continued to use the LSAC Trademarks without authorization, after termination of the 2024 CLA between LSAC and TestMax.

100. As a result of TestMax's continued use of the LSAC Trademarks after termination of the 2024 CLA, LSAC has suffered and will continue to suffer irreparable harm to their goodwill and reputation.

101. LSAC has no adequate remedy at law for the above immediate and continuing harm. LSAC has been, and absent injunctive relief will continue to be, irreparably harmed by TestMax's actions.

102. As a direct and proximate result of TestMax's conduct, LSAC has suffered damage to the LSAC Trademarks and other damages in an amount to be proved at trial.

103. LSAC is entitled to, among other thing, an order enjoining and restraining TestMax's use of the LSAC Trademarks, as well as actual damages, TestMax's profits, the costs of the action, reasonable attorney's fees and any other remedies provided by 15 U.S.C. §§ 1116 and 1117.

## JURY DEMAND

LSAC hereby demands that all issues so triable be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, LSAC respectfully requests that the Court enter judgment in its favor and against TestMax as follows:

1. Award LSAC damages in the amount of $170,157, plus any additional unpaid fees, late fees, interest, attorneys' fees, and collection costs as provided in the 2020 CLA, 2023 CLA, and 2024 CLA;

2. Award LSAC any costs of collection incurred by LSAC, including reasonable attorneys' fees, costs and expenses;

3. Award LSAC pre-judgment and post-judgment interest;

4. Award LSAC three times the profits received by TestMax from sales and revenues of any kind made as a result of TestMax's unauthorized use of the LSAC Trademarks, and damages that LSAC has suffered as a result of TestMax's unauthorized use of the LSAC Trademarks (including, but not limited to, damages awarded pursuant to 15 U.S.C. § 1117, trebled);

5. For preliminary and permanent injunctive relief restraining and enjoining TestMax and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with TestMax (or their agents) from:

   a. Using any LSAC Trademarks and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols or designs, in connection with its business, as trademarks, trade names, domain name components or otherwise, to market, advertise, or identify TestMax's goods;

   b. Otherwise infringing the Marks;

   c. Representing by any means whatsoever, directly or indirectly, that any products or services offered or provided by TestMax are offered or authorized by LSAC, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of consumers as to the source or origin of such products or as to any authorization, sponsorship, approval, or affiliation relationship between TestMax and LSAC;

   d. Affixing, applying, annexing, or using in connection with the manufacture, distribution, marketing, advertising, packaging, sale, and/or offering for sale or other use of any products, a false description or representation,

      including without limitation words, symbols, photographs, or product representations similar to those used by LSAC, tending to falsely describe or represent such as being those of LSAC; and

6. An order, pursuant to 15 U.S.C. § 1116, requiring TestMax to file with this Court and serve upon LSAC within 30 days after the entry of a preliminary or permanent injunction a report, in writing and under oath, setting forth in detail the manner in which TestMax has complied with the injunction and this Prayer for Relief; and

7. Grant such other and further relief as the Court deems just and proper.

DATED: January 20, 2026　　　　　　　　　Respectfully Submitted

                                                /s/   David L. Axelrod

                                                David L. Axelrod
                                                **BALLARD SPAHR LLP**
                                                1735 Market Street, 51st Floor
                                                Philadelphia, PA 19103
                                                Telephone: 215-665-8500

                                                Paul Tanck (admission pending)
                                                Wade G. Perrin (admission pending)
                                                **ALSTON & BIRD LLP**
                                                90 Park Avenue
                                                New York, NY 10016
                                                Telephone:  212-210-9400

                                                *Attorneys for Plaintiff Law School Admission Council, Inc.*